AO 106 (Rev. 04/10) Application for a Search Warrant



# UNITED STATES DISTRICT COURT

for the

Eastern District of Virginia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information associated with<br>Mjackson051978@hotmail.com that is stored at<br>premises controlled by Microsoft Corporation/Hotmail | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.  4:24sw 37

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A

located in the _____Western_____ District of _____Washington_____ , there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 545 | Smuggling Goods into the United States |
| 26 U.S.C. § 5861 | Possession of Unregistered Firearms |
| 26 U.S.C. § 5844 | Illegal Importation of Firearms |

The application is based on these facts:
See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Reviewed by AUSA/SAUSA:*

_____
*Applicant's signature*

Alyson C. Yates, SAUSA /s/

_____
Todd Lyons, Special Agent, HSI

*Printed name and title*

*Printed name and title*

Sworn to before me and signed in my presence.

Date:     03/13/2024

_____
*Judge's signature*

City and state:  Norfolk, Virginia

Lawrence R. Leonard, U.S. Magistrate Judge

*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Newport News Division

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE HOTMAIL ACCOUNT:<br><br>Mjackson051978@hotmail.com<br><br>THAT IS STORED AT PREMISES CONTROLLED BY THE MICROSOFT CORPORATION/HOTMAIL. | **UNDER SEAL**<br><br>Case No. 4:24-sw-37 |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Special Agent Todd D. Lyons, hereinafter referred to as "your Affiant," being first duly sworn upon penalty of perjury, hereby depose and state as follows:

## I.    INTRODUCTION

1.    I make this Affidavit in support of an application under Federal Rule of Criminal Procedure 41 for a search warrant for information associated with Hotmail account mjackson051978@hotmail.com (the "SUBJECT ACCOUNT") that is stored at premises controlled by the Microsoft Corporation ("Microsoft"), an email provider headquartered at One Microsoft Way, Redmond, Washington 98052. The information to be searched is described in the following paragraphs and in Attachment A.

2.    This Affidavit is made in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Microsoft to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon

1

receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

3.    The statements contained in this Affidavit are based upon your Affiant's investigation and personal knowledge, and/or on information provided by other law enforcement officers, agents, and personnel, as well as on your Affiant's experience, background, and training.

4.    Because this Affidavit is being submitted for the limited purpose of establishing probable cause to conduct a search of the SUBJECT ACCOUNT, it is not intended to include each and every fact and matter observed by your Affiant or other law enforcement officers or known to the investigation; therefore, your Affiant has set forth only those facts believed to be necessary to establish probable cause. Where statements made by others or from documentary review have been reported, said statements are reported in substance and in part, unless otherwise noted.

5.    Based on my training and experience and the facts as set forth in this Affidavit, there is probable cause to believe that violations of 18 U.S.C. § 545, Smuggling Goods into the United States; 26 U.S.C. § 5861(d), (k), Possession of Unregistered Firearms; and 26 U.S.C. § 5844, Illegal Importation of Firearms have been committed by Michael David JACKSON (JACKSON). There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, and/or fruits of these crimes further described in Attachment B.

## II.    AGENT BACKGROUND AND TRAINING

6.    I, Todd D. Lyons, am a Special Agent employed by the United States Department of Homeland Security (DHS), Homeland Security Investigations (HSI) and have been since May 2019. Prior to being a special agent with HSI, I was employed as a police officer in Virginia for over 10 years. As a police officer, I worked as a Patrolman, Training Officer, Detective, and HSI

2

Task Force Officer (TFO), and a Supervisor (Sergeant) in both Patrol and Detective Divisions. Prior to being employed as a police officer, I was a Deputy Sheriff in Virginia for over 4 years.

7.      I am a graduate of the Basic Law Enforcement Couse at the Hampton Roads Criminal Justice Training Academy located in Newport News, Virginia; the Federal Bureau of Investigation (FBI) National Academy located in Quantico, Virginia; the Criminal Investigator Training Program at the Federal Law Enforcement Training Center located in Brunswick, Georgia; and the HSI Academy located in Brunswick, Georgia.  I have received training specific to the mission of HSI Special Agents and the statutes they enforce.

8.      As an HSI Special Agent, I am a law enforcement officer of the United States within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C) and 18 U.S.C. § 2510(7)—that is, a federal agent empowered to conduct investigations and engaged in enforcing federal criminal statutes, including the unlawful importation and exportation of merchandise into and out of the United States.

9.      I have conducted multiple investigations for a variety of violations of federal and state law, including drug smuggling and distribution, gang investigations, violent crime, and a variety of offenses involving firearms.  In my investigative experience, I have made arrests and executed arrest warrants, conducted physical surveillance, conducted electronic surveillance, executed search warrants, conducted searches, seized evidence, and reviewed recordings.  I have interviewed witnesses, victims, and worked with cooperating individuals.

## III.   APPLICABLE LAWS AND REGULATIONS AND DEFINITIONS

10.      Title 26, United States Code, Section 5845 defines "firearm" as, *inter alia*, "any silencer (as defined in section 921 of title 18, United States Code)."

11.     Title 18, United States Code, Section 921(a)(25) defines "silencer" as "any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication."

12.     Title 18, United States Code, Section 545 states in part:

Whoever knowingly and willfully, with intent to defraud the United States, smuggles, or clandestinely introduces or attempts to smuggle or clandestinely introduce into the United States any merchandise which should have been invoiced, or makes out or passes, or attempts to pass, through the customhouse any false, forged, or fraudulent invoice, or other document or paper; or [w]hoever fraudulently or knowingly imports or brings into the United States, any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law. . . [s]hall be fined under this title or imprisoned not more than 20 years, or both.

13.     Title 26, United States Code, Section 5861 provides:

It shall be unlawful for any person. . . (a) to engage in business as a manufacturer or importer of, or dealer in, firearms without having paid the special (occupational) tax required by section 5801 for his business or having registered as required by section 5802; or . . . (d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record; or . . . (k) to receive or possess a firearm which has been imported or brought into the United States in violation of section 5844.

14.     Title 26 United States Code, Section 5844 states:

No firearm shall be imported or brought into the United States or any territory under its control or jurisdiction unless the importer establishes, under regulations as may be prescribed by the Secretary, that the firearm to be imported or brought in is—(1) being imported or brought in for the use of the United States or any department, independent establishment, or agency thereof or any State or possession or any political subdivision thereof; or (2) being imported or brought in for scientific or research purposes; or (3) being imported or brought in solely for testing or use as a model by a registered manufacturer or solely for use as a sample by a registered importer or registered dealer; except that, the Secretary may permit the conditional importation or bringing in of a firearm for examination and testing in connection with classifying the firearm.

4

15.    Title 27, Code of Federal Regulations, Section 447.21 contains the U.S. Munitions Import List.  Under subsection (d) of the U.S. Munitions Import List, Category I—Firearms, the following defense articles, designated pursuant to Section 38(a) of the Arms Export Control Act, 22 U.S.C. § 2778(a), and E.O. 13637, are subject to controls: "Firearms silencers and suppressors, including flash suppressors."

16.    Title 27, Code of Federal Regulations, Section 447.52 lists import restrictions applicable to certain countries.  Subsection (a) provides, "It is the policy of the United States to deny licenses and other approvals with respect to defense articles and defense services originating in certain countries or areas."  Subsection (a) further provides, "This policy applies to countries or areas with respect to which the United States maintains an arms embargo," including China.  "It also applies when an import would not be in furtherance of world peace and the security and foreign policy of the United States."  27 C.F.R. § 447.52(a).

17.    The legal authority for this search warrant application regarding the Microsoft data is derived from 18 U.S.C. §§ 2701–2711, entitled "Stored Wire and Electronic Communications and Transactional Records Access."  Section 2703(a) provides in relevant part as follows:

> A governmental entity may require the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication, that is in electronic storage in an electronic communications system for one hundred and eighty days or less, only pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure (or, in the case of a State court, issued using State warrant procedures and, in the case of a court-martial or other proceeding under chapter 47 of title 10 (the Uniform Code of Military Justice), issued under section 846 of that title, in accordance with regulations prescribed by the President) by a court of competent jurisdiction. A governmental entity may require the disclosure by a provider of electronic communications services of the contents of a wire or electronic communication that has been in electronic storage in an electronic communications system for more than one hundred and eighty days by the means available under subsection (b) of this section.

5

18.    18 U.S.C. § 2703(b) provides in relevant part as follows:

(1) A governmental entity may require a provider of remote computing service to disclose the contents of any wire or electronic communication to which this paragraph is made applicable by paragraph (2) of this subsection—

(A) without required notice to the subscriber or customer, if the governmental entity obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure . . .

(2) Paragraph (1) is applicable with respect to any wire or electronic communication that is held or maintained on that service—

(A) on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such remote computing service; and

(B) solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for purposes of providing any services other than storage or computer processing.

19.    This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, this Court is "a district court of the United States . . . that—has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. Microsoft accepts out-of-state and out-of-district service of subpoenas, court orders, and search warrants by fax without the presence of a law enforcement officer. Accordingly, your Affiant will execute the requested search warrant by facsimile to the custodian of records at Microsoft, and permission is requested for the data to be copied/obtained outside of the presence of a law enforcement officer. It is anticipated that Microsoft will produce the requested records in

6

an electronic format accompanied by a signed authentication letter via email or on electronic media via U.S. Mail to your Affiant.

20.    This investigation involves offenses within the jurisdiction, and proper venue is in the United States District Court for the Eastern District of Virginia, as more fully articulated below.

## IV.    SUBJECT OF INVESTIGATION

21.    JACKSON is a United States Citizen who resides at 4023 Buchanan Dr., in Hampton, Virginia ("JACKSON RESIDENCE"). JACKSON is currently employed by the United States Department of the Army as a CW4, Chief Warrant Officer.

## V.    BACKGROUND ON ILLICIT FIREARMS TRAFFICKING

22.    Based on your Affiant's training and experience, and discussions with other federal law enforcement agents related to the investigation of international import National Firearms Act (NFA) violations, your Affiant has learned the following:

a.    Subjects involved in the trafficking of firearms and ammunition use a variety of methods to insulate their illegal activities from detection by law enforcement. These methods are common to both individuals and major firearms and ammunition trafficking organizations to varying degrees of sophistication.

b.    Subjects involved in the trafficking of illegal firearms and ammunition often utilize techniques to prevent the detection of firearms and firearm parts that are shipped unlawfully through mail and common carriers. Some common techniques include falsifying invoices, bills of sale, shipping papers, and customs forms to list the firearms contained in shipping packages as other items, including but not limited components used in the automotive, industrial, and machinery industries. Illegal firearm traffickers have also been known to ship firearms concealed inside of other objects to avoid detection by law enforcement officials.

c.    Persons engaged in illegal firearm and ammunition trafficking typically keep fruits, instrumentalities, and evidence of their criminal activities and associations at their residences, places of business, storage lockers, vehicles, and other locations under their control for extended periods of time. These items can include firearms (used both as items for sale and to protect the above items and profits), packaging materials, financial records, personal address/telephone books identifying co-conspirators, large sums of cash not immediately traceable to legitimate activity,

7

indicia of control/ownership, and other items such as those more particularly described in Attachment B and incorporated herein by reference.

d.     Individuals involved in illegal firearm and ammunition trafficking activity often use electronic devices such as cell phones, computers, and tablets in furtherance of their illicit distribution activities, for example; to access the internet to place orders for firearms or firearms silencers. They use such devices to communicate with suppliers and customers, and a host of other activities.

e.     Individuals involved with illegal firearm and ammunition trafficking activity use complex methods for ordering, paying for, and transferring firearms, firearm components, and/or ammunition. Traffickers' payment methods are often difficult to trace; they use U.S. currency, money orders, wire transfers, pre-paid credit cards and other similar online payment systems such as PayPal, Venmo, Apple Pay, and others that support online money transfers that serve as an electronic alternative to traditional paper methods like checks or money orders. They do this to hide the original source of funds from law enforcement.

## VI.    BACKGROUND ON "INLINE FILTERS," "FUEL FILTERS," AND "SOLVENT TRAPS"

23.     Your Affiant is aware of devices and items that can be modified to act as suppressors for firearms. Based on his training and experience, your Affiant has learned that items described as inline filters, fuel filters, and other descriptions of devices coming from foreign countries are marketed as being used in vehicles as fuel filters. These devices are also marketed as solvent traps, or devices designed to be screwed onto the end of a barrel to "catch" cleaning solvents. Your Affiant has learned that several types of these devices are actually silencers. These devices include: monolithic core devices, which consist of a one-piece core surrounded by a metal sleeve; a stacked baffle device, which has several metal pieces stacked inside of a tube that can be custom cut depending on the need of the user; and K baffles, which are similar to stacked baffles but have a more cone-shaped baffle inside of the metal tube. A silencer typically includes a metal tube with several interior baffles that form expansion chambers from which the gases expelled from the end of the firearm enter the expansion chambers and exit the suppressor. Based on analysis of previous

8

seizures, your Affiant has learned that a stacked baffle and K baffle silencers weigh approximately 0.13 kilogram to 0.18 kilogram, and a monolithic silencer weighs approximately 0.25 kilogram.

24.     Concerning the device marketed as a "solvent trap":  Legitimate solvent traps are devices attached to the muzzle of a firearm barrel designed to catch or "trap" dirty cleaning solvent pushed through the barrel from the chamber end and out through the muzzle of a firearm.  Solvent traps are intended to prevent solvent from dripping, spraying, or spattering when pushed out of the muzzle end of a firearm barrel.  The front-end cap of a solvent trap must be solid and have no hole that will allow a projectile to pass through (including "pilot" holes that can be widened to allow a projectile to pass through, or marks indicating the location to drill such a hole).  Devices that have a hole in or indexing mark for a hole in the front-end cap are classified as "firearm silencers" under the NFA.

25.     The intended purpose of these devices is to trap and hold cleaning fluids during the process of cleaning a firearm, and there should not be a hole or index mark in the endcaps of these items.  A "solvent trap" in and of itself may have a legitimate purpose of catching excess cleaning fluids and is not a silencer until modified.  However, these devices can be manufactured with the intent of repurposing them as silencers.  For example, the device may be sold with index markings to indicate where a hole(s) should be drilled, and/or the device may be sold with "spacers" that act as baffles that prevent the spreading of sound.  A firearms silencer typically includes a metal tube with several interior baffles that form expansion chambers for which the gases expelled from the end of the firearm enter the expansion chambers and exit the suppressor.

26.     Based on analysis of previous seizures, your Affiant has learned that some suppressors/firearms silencers are manifested as "Fuel filters."  According to information received from the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF), including conversations with

9

ATF agents and in review of the ATF Firearms & Ammunition Technology Division, Technical Bulletin 20-01 (Oct. 30, 2019), inline filters are distinctively different from spin-on filters. Spin-on filters have holes at both ends and are specifically designed to allow fluid to pass through the body of the device. Inline filters, as regularly manufactured, advertised, and shipped to the United States by foreign companies, are made without center holes and constructed with no other permeable surface or permeable infrastructure that would allow fluid to filter through. As manufactured, inline filters do not contain any components that would retain or filter fine particulate matter. Moreover, these inline filters as shipped do not contain any media, instructions, or manuals to allow the user to utilize them as filters. Rather, as manufactured, the inline filters are constructed like firearm silencers. The inline filters regularly discovered by U.S. Customs and Border Protection (CBP) Officers contain solid metal interior components (which are similar to the baffles contained in a silencer to temper and quiet the noise coming out a barrel when a round is discharged). One way to modify or redesign or remake an inline filter into a fully functioning silencer is to drill holes where the manufacturer has marked the end caps and the solid metal interior components, thereby allowing a bullet to pass through unhindered. In addition, a number of these "fuel filters" are shipped with an included endcap that is manufactured with threading, allowing it to be screwed onto the end of the tube and a fully machined out hole that a bullet can pass through, without any additional modification necessary.

27.    Based upon your Affiant's training, experience, and discussions with other federal agents related to the investigation of international import-related and NFA violations, this Affiant is aware that silencers vary by design and appearance, but all, when properly installed, will silence, muffle, or diminish, the report of a portable firearm. The making of a silencer must be approved in advance by the ATF. Unlicensed persons must file an ATF Form 1, which is an application to

10

make a firearm, pay a $200.00 USD tax, and comply with all other provisions of the law prior to making the firearm. Approval of Form 1 results in the registration of the firearm, and any subsequent transfers must be approved in advanced by the ATF. ATF Form 6 is required to import firearms into the United States.

## VII.    FACTS ESTABLISHING PROBABLE CAUSE TO SEARCH THE SUBJECT ACCOUNT

28.    Beginning in and around October 2019, HSI has been investigating certain unlawful importations of firearms and related controlled components into the United States, specifically, those originating from sources in China and elsewhere. According to the ATF, recently there has been an influx of counterfeit or non-regulated suppressors entering the United States via foreign sources. ATF has encountered these suppressors and partnered with HSI and CBP to combat the flow of these suppressors into the United States. Since this operation has commenced, there have been over 7,000 of these devices seized at U.S. Ports of Entry and during investigative controlled deliveries to targeted individuals who received the items contrary to law. During the course of your Affiant's investigations of these types of cases, he has learned that these devices are shipped into the United States manifested as "hardware," "filters," "tool," a variety of terms containing the word "Tube" or "Tubes," as well as a variety of descriptions incorporating these same terms.

29.    Pursuant to their authority as Customs officers under Title 19 of the United States Code, U.S. CBP Officers may conduct examinations of goods entering the United States without a search warrant, probable cause, or individualized suspicion. HSI Special Agents are granted this same authority, commonly known as "Border Search Authority." This is codified under 19 C.F.R. § 162.6.

30.    A search for the international shipment history for the residence located at 4023 Buchanan Drive, Hampton, VA 23669 utilizing a law enforcement database revealed the following

11

information concerning international parcels from China addressed to JACKSON.

31.    SUBJECT PARCEL 1, listed under shipment ID 20105927046, was shipped to the JACKSON RESIDENCE, entering the United States on November 26, 2023. The listed shipper was Oxzone Trading Corporation Limited of Flat 1506, 15f Lucky Ctr No 165-171 Hong Kong, and the parcel was manifested as a "Cleaning Tube" and weighed approximately 0.26 KG.

32.    SUBJECT PARCEL 2, listed under shipment ID 20493464251, was shipped to the JACKSON RESIDENCE and entered the United States on December 27, 2023. The listed shipper was Chen Haitao of Shanghai Chuansha Shanghai at an address in China, and the parcel was manifested as a "Plastic Tube" and weighed approximately 2.98 KG. This shipment was examined by CBP Officers at the JFK International Airport (JFK) International Mail Facility (IMF). Contained within the parcel were firearms silencers, which were seized on January 11, 2024.

33.    SUBJECT PARCEL 2 was received by agents in Norfolk on January 17, 2024, and inspected. The parcel was contained by a gray plastic bag. The shipping label showed the parcel was addressed to Michael JACKSON at the JACKSON RESIDENCE. The label showed a tracking number of 9261 2903 1982 8400 0162 3980 36. The customs label, which is affixed underneath the shipping label, also revealed a telephone number of 253-224-2222. The parcel contained cardboard boxes with several parts, including baffles, tubes, and end caps. The parcel also contained a Nielsen Device. Nielsen Devices, also known as muzzle boosters, exist to help short recoil guns cycle properly and overcome the excessive weight at the end of the barrel. Because the barrel has to move in such a system, the weight of a silencer often requires extra force to help cycle the gun. All of the parts contained within SUBJECT PARCEL 2 are parts designed and intended for use in assembling or fabricating a firearm silencer or firearm muffler. Photos of that seizure are below:

12






34.     SUBJECT PARCEL 3, listed under shipment ID 20823765220, was shipped to the JACKSON RESIDENCE, entering the United States on January 31, 2024.  The listed shipper was Laidongmei of 303 Building B Huijin Plaza Shenzhen, an address in China, and the parcel was manifested as a "Tool" and weighed approximately 1 KG.

13

35.    SUBJECT PARCEL 4, listed under shipment ID 20866871793, was shipped to the JACKSON RESIDENCE, entering the United States on February 4, 2024.  The listed shipper was Xing Ren Trade Co. Lt of Qing Nian Lu No 17 Beijing, an address in China, and the parcel was manifested as "Tubes" and weighed approximately 0.70 KG.

36.    SUBJECT PARCEL 5, listed under shipment ID 20894802171, was shipped to the JACKSON RESIDENCE and entered the United States on February 6, 2024.  The listed shipper was Beijing Yanwen Logis of Building 3 101 no 1 Baoanxixiang av Beijing, an address in China, and the parcel was manifested as "Tubes" and weighed approximately 2.21 KG.  CBP Officers at the JFK IMF examined the shipment and ultimately seized four firearms silencers on February 13, 2024.

37.    SUBJECT PARCEL 5 was received by agents in Norfolk on February 15, 2024, and inspected.  The parcel was in a gray plastic shipping bag.  The shipping label on the parcel showed that the parcel was addressed to Michael JACKSON at the JACKSON RESIDENCE.  The label showed a tracking number of 9261 2903 2698 2110 0042 3237 82.  The customs label, which is affixed underneath the shipping label, also revealed a telephone number of 253-224-2222.  Contained within the parcel was a total of four silencers: two monolithic core firearms silencers, and two stacked baffle silencers, along with endcaps.  Also contained in the parcel were other items used to mask the true nature of the silencers contained within, like blue rubber tubing and brackets.  Your Affiant has attached photos of SUBJECT PARCEL 5 and the seized silencers below:





38.    On February 15, 2024, ATF Special Agent (SA) Nick Ivone also inspected the devices. SA Ivone has previously consulted with the ATF Firearms and Ammunition Technology Division on similarly seized suppressors. SA Ivone agreed that, based on his training and experience, the seized silencers (pictured above) are consistent with previously confirmed firearm silencers.

39.    SUBJECT PARCEL 6, listed under shipment ID 20935089846, was shipped to the JACKSON RESIDENCE, entering the United States on February 10, 2024. The listed shipper was Xing Ren Trade Co. Lt of Qing Nian Lu No 17 Beijing, an address in China, and the parcel was manifested as "Tubes" and weighed approximately 0.70 KG.

40.    SUBJECT PARCEL 7, listed under shipment ID 21084813738, was shipped to the JACKSON RESIDENCE, entering the United States on February 26, 2024. The listed shipper was JET INC of Huaxu Rd Xujing Town Shanghai China, and the parcel was manifested as hardware with a listed weight of approximately 0.45 KG. CBP Officers at the JFK IMF examined the shipment and ultimately seized one firearms silencer and a flash suppressor on March 1, 2024. Photographs of that seizure are posted below:

 

16

41.    As detailed above, as of February 2024, law enforcement databases revealed that JACKSON is suspected of receiving four (4) other shipments of firearm silencers and/or parts or components designed or intended for the use in the assembly of a silencer. The data shows that JACKSON has already received packages at the JACKSON RESIDENCE believed to contain silencers or parts intended for use in assembly of silencers that are manifested as "Tubes," "Cleaning Tubes," and "Tool." Each of these shippers in China are known to law enforcement as previous shippers of silencers and/or other illegal firearms. Based on the above-listed concealment/mislabeling methods, as well as the weights of the packages, it is suspected that the packages that JACKSON has already received contain silencers or parts intended for the assembly of silencers.

42.    JACKSON has no active or pending Federal Firearms Licenses (FFL). JACKSON, therefore, cannot import firearms, to include suppressors. The above-listed items were not registered with the ATF, and JACKSON is not a registered manufacturer of firearms. There is no evidence that JACKSON, whose role with the United States Army is as a helicopter mechanic, imported these items "for the use of the United States or any department, independent establishment, or agency thereof."

43.    JACKSON purchased two (2) semi-automatic rifles, a Diamondback DB-15, 5.56 caliber, and a Diamondback DB-10, .308 caliber, on December 1, 2023. JACKSON purchased the firearms from Tacticool Firearms located at 9913 Warwick Blvd. in Newport News, Virginia. During that purchase, JACKSON was required to fill out and complete an ATF Form 4473. JACKSON listed his email address as Mjackson051978@hotmail.com (the SUBJECT ACCOUNT). JACKSON also listed his telephone number as 253-224-2222, which is the same

17

telephone number that was affixed to both SUBJECT PARCEL 2 and SUBJECT PARCEL 5. A screenshot of the ATF Form 4473 is pictured below:



44.     Based on my training and experience, I know that firearm silencers are generally shipped to the United States from China based upon an online order by a buyer from an online or internet-based store. The foreign-based shipper then sends the firearm silencer through the mail stream or a private parcel delivery service. These crimes involve some amount of communication, including the use of emails, among those involved. Typically, online orders require an email address to send an order confirmation email and/or tracking number from the foreign shipper. I know from training and experience that cell phones are often used for accessing email accounts and used for this purpose and that an email account of a participant in such criminal activity often contains evidence of communication with a foreign company or among accomplices. In my training and experience, such communications have revealed the identities and relationships between and among the involved individuals, as well as their motive, hostility, knowledge, and intent relating to the crime. Moreover, such communications have also revealed consciousness of guilt and efforts to impede police investigation.

## VIII. BACKGROUND CONCERNING MICROSOFT

45.     Based upon my training and experience, and information acquired from other law enforcement officials with technical expertise, I have learned the following information. Microsoft provides a variety of online services, including electronic mail ("email") access, to the public.

18

Microsoft once allowed subscribers to obtain email accounts at the domain name "@hotmail.com," like the email account listed in Attachment A. Hotmail was effectively phased out by Microsoft in 2013 and is now Outlook.com; however, users were able to keep their old Hotmail addresses.

46.    In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account. Such information can include the subscriber's full name, physical address, telephone numbers, and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). Therefore, the computers of Microsoft are likely to contain stored electronic communications (including retrieved and unretrieved email for Microsoft Corporation/Hotmail subscribers) and information concerning subscribers and their use of Microsoft services, such as account access information, email transaction information, and account application information.

47.    In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that, even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

48.    In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (*i.e.*, session), times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the

account. In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

49.    In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

50.    In general, an email that is sent to a Microsoft subscriber is stored in the subscriber's "mail box" on Microsoft servers until the subscriber deletes the email. If the subscriber does not delete the message, the message can remain on Microsoft servers indefinitely. Even if the subscriber deletes the email, it may continue to be available on Microsoft servers for a certain period of time.

51.    When the subscriber sends an email, it is initiated at the user's computer, transferred via the Internet to Microsoft servers, and then transmitted to its end destination. Microsoft often saves a copy of the email sent. Unless the sender of the email specifically deletes the email from the Microsoft server, the email can remain on the system indefinitely. Even if the sender deletes the email, it may continue to be available on Microsoft servers for a certain period of time.

20

52.     A sent or received email typically includes the content of the message, source and destination addresses, the date and time at which the email was sent, and the size and length of the email. If an email user writes a draft message but does not send it, that message may also be saved by Microsoft but may not include all of these categories of data.

53.     A Microsoft subscriber can also store files, including emails, address books, contact or buddy lists, calendar data, pictures, and other files, on servers maintained and/or owned by Microsoft.

54.     Subscribers to Microsoft might not store on their home computers copies of the emails stored in their Microsoft account. This is particularly true when they access their Microsoft account through the web, or if they do not wish to maintain particular emails or files in their residence.

55.     As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling law enforcement to establish and prove each element, or, alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the email provider can show how and when the account was accessed or used. For example, as described above, email providers typically log the IP addresses from which users access the email account, along with the time and date of that access. By determining the physical location

21

associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video sent via email). Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (*e.g.*, communications relating to the crime) or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).

56.     Searching for the evidence described in this warrant application may require a range of data analysis techniques. In some cases, law enforcement officers and computer analysts may be able to conduct carefully targeted searches to locate evidence without needing to carry out a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence described in the warrant. Criminals can mislabel, misspell, or hide information, encode communications to avoid using key words, attempt to delete information to evade detection, or take other steps designed to frustrate law enforcement searches for information.

57.     Accordingly, law enforcement officials or other analysts with appropriate expertise may need to conduct more extensive searches not obviously related to the evidence described in this warrant application or perusing all stored information briefly to determine whether it falls within the scope of the warrant. In light of these difficulties, HSI and its partners intend to use

22

whatever data analysis techniques appear necessary to locate and retrieve the evidence described in this warrant application.

58.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Microsoft. Because the warrant will be served on Microsoft, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## IX.    CONCLUSION

59.    Based on the foregoing, there is probable cause to believe that the user of the SUBJECT ACCOUNT, described in Attachment A, Michael David JACKSON, has violated 18 U.S.C. § 545, Smuggling Goods into the United States; 26 U.S.C. § 5861(d), (k), Possession of Unregistered Firearms; and 26 U.S.C. § 5844, Illegal Importation of Firearms, and that probable cause exists to believe that evidence, fruits, and instrumentalities of such violations will be found within the information associated with the Microsoft/Hotmail account.

## X.    REQUEST FOR SEALING

60.    I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until March 13, 2025, unless provided otherwise by further Order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

*FURTHER YOUR AFFIANT SAYETH NOT.*

23

Respectfully submitted,

Special Agent Todd D. Lyons
Homeland Security Investigations
U.S. Department of Homeland Security

This affidavit has been reviewed for legal sufficiency by Special Assistant United States Attorney Alyson Yates.

Alyson Yates
Special Assistant United States Attorney

Sworn and subscribed to before me this 13th day of March 2024, in the City of Norfolk, Virginia.

Honorable Lawrence R. Leonard
United States Magistrate Judge
United States District Court for the Eastern District of Virginia

24

## <u>ATTACHMENT A</u>

**Property to Be Searched**

This warrant applies to information associated with Microsoft Corporation/Hotmail email account Mjackson051978@hotmail.com, which is stored at premises owned, maintained, controlled, or operated by Microsoft Corporation/Hotmail, a company headquartered at One Microsoft Way, Redmond, WA 98052, regardless of where such information is stored, held, or maintained.

## ATTACHMENT B

### Particular Things to Be Seized

**I.    Information to be disclosed by Microsoft Corporation/Hotmail (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

A.    All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the types of service utilized, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number).

B.    All records or other information stored by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files.

C.    All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

D.      From December 1, 2022, to present, all content (whether created, uploaded, or shared by or with the account), records, and other information relating to:

1.  The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, deleted emails, emails preserved pursuant to a request made under 18 U.S.C. § 2703(f), the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

2.  All records pertaining to the Microsoft/Hotmail Chat/Messenger, including friends lists for Hotmail user mjackson051978@hotmail.com; messenger, time, date, and IP address logs for Chat and Messenger, as well as any content available; and

3.  All records pertaining to the account, IP address and timestamp of content uploaded to the account, and Groups to which a mjackson051978@hotmail.com belongs, as well as Group content.

E.      All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to the Provider (including, but not limited to, the keybag.txt and fileinfolist.txt files).

The Provider is hereby ordered to disclose the above information to the government within fourteen days of issuance of this warrant.

## II.     Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of 18 U.S.C. § 545, Smuggling Goods into the United States; 26 U.S.C. § 5861(d), (k), Possession of Unregistered Firearms; and 26 U.S.C. § 5844, Illegal Importation of Firearms, involving Michael David JACKSON and occurring on or after December

1, 2022, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.      All records or other information relating to smuggling goods into the United States, to wit firearms silencers.

b.      All records or other information relating to possession of unregistered firearms.

c.      All records or other information relating to the illegal importation of firearms.

d.      All records or other information relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts, related to the crimes under investigation.

e.      Evidence indicating the email account owner's state of mind as it relates to the crimes under investigation.

f.      All images, messages and communications regarding wiping software, encryption or other methods to avoid detection by law enforcement.

g.      Passwords and encryption keys, and other access information that may be necessary to access the subject account and other associated accounts.